**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHAWNECE SMITH, an individual<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL MANAGEMENT<br>INTERNATIONAL, INC., d.b.a. BANFIELD<br>PET HOSPITAL, a Delaware corporation,<br><br>Defendant. | CIVIL NO.<br><br>Removed from:<br><br>Supreme Court of the State of New York<br>County of West Chester<br><br>Index No. 59755-14<br><br><br>**NOTICE OF REMOVAL** |

To The Honorable Judges of the United States District Court

For the Southern District of New York:

  **PLEASE TAKE NOTICE** that Defendant, Medical Management International, Inc.

d.b.a. Banfield Pet Hospital ("Banfield"), by and through their counsel, Lomurro, Davison,

Eastman & Munoz, P.A., pursuant to 28 U.S.C. §§ 1441 and 1446 and Local Rule 81.1 of the

United States District Court for the Southern District of New York, hereby remove this action

from the Supreme Court of the State of New York, County of West Chester, to the United States

District Court for the Southern District of New York on the following grounds:

  1. On June 23, 2014, Plaintiff, Shawnece Smith, ("Plaintiff") commenced this action

against Banfield in the Supreme Court of the State of New York, County of West Chester, under

Index No. 59755-14.

  2. Plaintiff served Banfield by serving the New York Secretary of State on July 2,

2014.

3.      Attached hereto as "Exhibit A" is a true and correct copy of all process, pleadings and orders served upon Banfield in this action to date.

4.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because it is being filed within thirty (30) days since the service of the Summons and Complaint.

5.      As stated in the Complaint, Plaintiff is an individual citizen residing in the state of Massachusetts.

6.      Banfield is a Delaware corporation with its principal place of business in Multnomah County in the State of Oregon.

7.      Plaintiff's Complaint seeks economic damages, emotional distress damages, punitive damages and liquidated damages in excess of $75,000.

8.      There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Accordingly, this is an action over which the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and is an action that may be removed to this court pursuant to 28 U.S.C. § 1441(c).

9.      Removal venue lies in the Southern District of New York because Plaintiff's action was filed and is pending in this District.

10.      Banfield will promptly serve a copy of this Notice on counsel for Plaintiff and will file a copy of this Notice with the Clerk of the Supreme Court of the State of New York, County of West Chester, pursuant to 28 U.S.C. § 1446(d).

11.      By filing this Notice of Removal and removing this case, Banfield does not waive, but rather expressly preserves any and all defenses.

WHEREFORE, Banfield  respectfully requests the following:

a.  That this action be removed from the Supreme Court of the State of New York, Country of West Chester, to this Court

b.  That this Court accept jurisdiction; and

c. Henceforth that this action be placed on the docket by this Court as if it was filed in

this Court initially.

By,

LOMURRO, DAVISON, EASTMAN & MUÑOZ, P.A.

Rebecca C. Carvalho (RC-8265)
Monmouth Executive Park
100 Willow Brook Road, Suite 100
Freehold, NJ 07728
Telephone: (732) 462-7170
Facsimile: (732) 462-8955
Counsel for Defendant, Medical Management International, Inc. d.b.a. Banfield Pet Hospital

Dated: August 1, 2014

State of New York - Department of State
Division of Corporations

Party Served:                                        Plaintiff/Petitioner:
 MEDICAL MANAGEMENT INTERNATIONAL, INC.                 SMITH, SHAWNECE



 MEDICAL MANAGEMENT INTERNATIONAL, INC.
 ATTN: TAX DEPT
 PO BOX 13998
 PORTLAND,  OR 97213


 Dear Sir/Madam:
 Enclosed herewith is a legal document which was served upon the Secretary of
 State on 07/02/2014 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
  This copy is being transmitted pursuant to such statute to the address
 provided for such purpose.


                                                   Very truly yours,
                                             Division of Corporations



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** WESTCHESTER
-------------------------------------------------------------------X
SHAWNECE SMITH

                              Plaintiff/Petitioner,

            - against -                             Index No. 59755/2014

MEDICAL MANAGEMENT INTERNATIONAL,INC.,
D.B.A. BANFIELD PET HOSPITAL, A DELAWARE
CORPORATION
                              Defendant/Respondent.
-------------------------------------------------------------------X

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: 06/26/2014

_____ (Signature)          369 LEXINGTON AVE 10TH ____ (Address)
                                             FLOOR
ADAM GONNELLI _____ (Name)            NEW YORK, NY 10017

FARUQI & FARUQI, LLP _____ (Firm Name)     212-983-9330 _____
                                             _____ (Phone)
                                             _____ (E-Mail)


To:   MEDICAL _____
      MANAGEMENT
      INTERNATIONAL INC.

      _____

FILED: WESTCHESTER COUNTY CLERK 06/23/2014

NYSCEF DOC. NO. 1

INDEX NO. 59755/2014

RECEIVED NYSCEF: 06/23/2014

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

---------------------------------------------------------------

SHAWNECE SMITH,                                            X

                      Plaintiff,                      :       **Index No.**

                                :       **SUMMONS**

        v.                                  :

MEDICAL MANAGEMENT                            :
INTERNATIONAL, INC., d.b.a. BANFIELD         :
PET HOSPITAL, a Delaware Corporation,         :

                        Defendant.           X

---------------------------------------------------------------

**TO THE ABOVE-NAMED DEFENDANTS:**

You are hereby summoned and required to serve upon Plaintiff's attorneys an answer to the Complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue designated is Westchester County because: (i) a substantial portion of the transaction and wrongs complained of, including defendants' primary participation in the wrongful acts, occurred in this County; (ii) two of more of the defendants either reside in or maintain executive offices in this County; and (iii) defendants have received substantial compensation in this County by engaging in numerous activities and conducting business, which had an effect in this County.

Dated: June 23, 2014

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:___ /s/ Adam Gonnelli___
        Adam Gonnelli
Javier Hidalgo
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: (212)-983-9330
Fax: (212)-983-9331
Email:  agonelli@faruqilaw.com
       jhidalgo@faruqilaw.com

*Attorneys for Plaintiff*

**NEW YORK STATE SUPREME COURT**
**COUNTY OF WESTCHESTER**

---

SHAWNECE SMITH,

                       Plaintiff,

       v.

MEDICAL MANAGEMENT INTERNATIONAL,
INC., d.b.a. BANFIELD PET HOSPITAL, a
Delaware Corporation,

                   Defendant.

---

Index No.:

**COMPLAINT**
**JURY TRIAL DEMANDED**

---

## PRELIMINARY STATEMENT

1.     This case concerns pregnancy discrimination committed by Medical Management International, Inc., d.b.a. Banfield Pet Hospital ("Banfield" or "Defendant").

2.     Shawnece Smith ("Plaintiff"), a receptionist who worked for Banfield, brings this case to remedy Defendant's discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL").

3.     Once Ms. Smith had informed Banfield that she was pregnant, Banfield embarked on a campaign to make life as difficult as possible for her so that she would quit. Ms. Smith was subjected to frequent verbal abuse, forced to stand for long hours, unsuccessfully pressured to take early maternity leave, and finally fired.

4.     Ms. Smith seeks compensatory damages and other appropriate legal and equitable relief pursuant to the NYSHRL.

## PARTIES

5.      Ms. Smith was employed by Banfield Pet Hospital, at its 3131 E. Main Street, Mohegan Lake, New York 10547 location, for approximately two years until she was fired in May 2013 because she was pregnant.  Ms. Smith was a resident of Bronx, New York while employed by Banfield and is currently a resident of Springfield, Massachusetts.  Ms. Smith was an "employee" under the NYSHRL at all relevant times.

6.      Defendant Medical Management International, Inc., d.b.a. Banfield Pet Hospital, is a Delaware Corporation headquartered in Portland, Oregon.  Banfield is a nationwide chain of pet hospitals mostly located inside PetSmart retail stores.  Plaintiff worked at the Banfield located inside a PetSmart at the same address.  Banfield was an "employer" under the NYSHRL at all relevant times.

## FACTS

7.      Plaintiff was a receptionist at Banfield for approximately two years until May of 2013.

8.      Ms. Smith was mainly required to be stationed at the front desk.

9.      Ms. Smith's responsibilities included answering telephones, checking patients in and out, escorting owners and animals to examination rooms, filling out paperwork, weighing pets, dispensing certain medicines, and cleaning examination rooms after appointments.

10.     Ms. Smith was often one of two receptionists on duty at any given time.  On Wednesdays Ms. Smith was usually the only receptionist on duty during her shift.

11.     Banfield required its receptionists to remain standing while stationed at the front desk, and there were no chairs or stools for employees to use while stationed in the front.

12.     Ms. Smith was required to remain standing for approximately 8 hours per day and was only permitted to sit during her lunch breaks.

2

13.     Jan Woodward ("Woodward") was the Banfield Manager at the Mohegan Lake location.

14.     As the Manager, Woodward had the authority to hire and fire employees and had control over employee compensation.

15.     Ms. Woodward answered to the regional/district manager, Kim Audit ("Audit"). Audit would visit the Mohegan Lake Banfield location approximately once per month.

16.     Both Woodward and Audit are agents of Banfield.

17.     In or around February 2013, Ms. Smith privately informed Ms. Woodward that she was pregnant.  Shortly thereafter, Woodward also informed Audit that she was pregnant.

18.     Plaintiff's relationship with Ms. Woodward was pleasant and cordial before Ms. Smith revealed her pregnancy to Ms. Woodward.

19.     When Ms. Smith told Ms. Woodward she was pregnant, Ms. Woodward asked Plaintiff uncomfortably personal questions.  Specifically, Ms. Woodward asked Plaintiff whether the pregnancy was planned and whether she had used contraception.   Plaintiff was not comfortable with the questions and did not answer.

20.     Following this conversation, Ms. Smith's relationship with Ms. Woodward quickly deteriorated, and Ms. Smith was subjected to increasingly discriminatory treatment.

**MS. SMITH IS SUBJECTED TO VERBAL ABUSE BECAUSE OF HER PREGNANCY**

21.     Ms. Woodward began to publicly and loudly reprimand and ridicule Ms. Smith for using the restroom more frequently due to her pregnancy.  This would happen approximately once a week.  Ms. Woodward would also loudly complain to other employees about Plaintiff's increased bathroom use within earshot of Plaintiff, or yell at Plaintiff about her bathroom use.

For example, on one occasion, Plaintiff could hear Ms. Woodward asking other employees "Who needs to use the bathroom that much?"

22.    On other occasions when chastising Plaintiff, Woodward told Plaintiff that regardless of her pregnancy, Plaintiff could not freely use the restroom whenever she needed to and would instead have to "hold it."

23.    In addition, at least once a week, Woodward would call Ms. Smith into a room and yell at her regarding her pregnancy and the fact that she was occasionally late because of morning sickness.  These weekly tirades occurred whether Ms. Smith had been late or not and occurred throughout the remainder of her employment with Banfield.  During these episodes, Ms. Woodward would yell that Ms. Smith's pregnancy was affecting her job and even once yelled, "You bring out the worst in me!"

24.    On several occasions, Ms. Woodward loudly proclaimed to other employees, while in Plaintiff's presence, that she did not want to have children and that she did not like children.  Ms. Woodward was aware Plaintiff could hear her say this and that it made Plaintiff uncomfortable.

25.    Despite Plaintiff asking Ms. Woodward not to discuss her pregnancy with other employees, Ms. Woodward told at least one of Plaintiff's co-workers about her belief that Ms. Smith's pregnancy was not planned.

## BANFIELD REFUSES TO ALLOW MS. SMITH TO SIT

26.    Additionally, in or around March 2013, Ms. Smith began to experience pregnancy-related swelling of her feet or ankles, called edema.  While edema is common during pregnancy, it is recommended pregnant women avoid standing for long periods. *See e.g.* Roger W. Harms, M.D., *What Causes Ankle Swelling During Pregnancy – and What Can I do About*

*it?*, Mayo Clinic (Sept. 10, 2011), http://www.mayoclinic.org/healthy-living/pregnancy-week-by-week/expert-answers/swelling-during-pregnancy/faq-20058467.

27.     In or around March 2013, Ms. Smith asked Ms. Woodward if she could have a stool to sit on while stationed behind the front desk.  Ms. Woodward told Plaintiff she would order a stool for her, but never did.

28.     The veterinarians at Banfield are provided with stools and Plaintiff knew there was an extra stool in the back of the office.  Ms. Woodward occasionally brought the stool to her station and sat on it to relieve the pressure on her back and legs when not interacting with customers.  When Ms. Woodward discovered Plaintiff using the extra stool to sit at the front desk, she told Ms. Smith that company policy required Plaintiff to stand and that Ms. Audit would not provide a stool unless Plaintiff obtained a doctor's note saying she needed a chair.

29.     Plaintiff duly provided Ms. Woodward with a doctor's note explaining that due to her pregnancy, Plaintiff needed a stool.  However, no stool was ever ordered for her, and she was forbidden from using the other stools in the office.

30.     The failure to provide even this minor accommodation was exacerbated by Ms. Woodward forcing Ms. Smith to stand even more.  Approximately once per week, after learning of Ms. Smith's pregnancy, Woodward would order Plaintiff to only take a half-hour lunch instead of the whole hour.  In the 18 months before she told Ms. Woodward about her pregnancy, she was never asked to do this.  The result was that during several workdays per week, Ms. Smith was forced to stand even longer than usual.

## MS. SMITH IS REPRIMANDED FOR CALLING CORPORATE

31.     Due to Ms. Smith's pregnancy, she needed to eat more often, and as many pregnant women do, Ms. Smith had a need to snack in between meals.

32.    On one occasion Ms. Woodward discovered Ms. Smith eating a snack while answering phone calls and working, and Woodward docked her pay for fifteen minutes. Plaintiff believed (correctly so) she was entitled to a 15-minute paid break.  After having her pay docked, Plaintiff called Banfield's corporate number and confirmed with Banfield that she was in fact entitled to a paid 15-minute break.  Plaintiff then informed Woodward she was entitled to be paid for the 15-minute break.   Woodward corrected with error in pay, but chastised Plaintiff for contacting Banfield's corporate offices and trying to learn what her rights were.

33.    Ms. Smith is unaware of any other employees being chastised, let alone getting their pay docked, for eating snacks.

**BANFIELD REFUSES TO ACCOMMODATE MS. SMITH'S MORNING SICKNESS**

34.    Ms. Smith also began to suffer from morning sickness as her pregnancy progressed.  She would often experience some morning sickness symptoms while at work.  Ms. Smith would sometimes have attacks of severe morning sickness during the one hour drive from the Bronx to Mohegan Lake.  Ms. Smith's morning sickness symptoms included nausea, vomiting, and dizziness.  When this occurred, she would pull off the road to vomit, rest, and/or recover until the incident passed.

35.    As Plaintiff's pregnancy progressed, she occasionally arrived five or ten minutes late due to morning sickness or illness associated with her pregnancy.  After a few instances of morning sickness, Ms. Smith began to leave for work earlier in case she had an episode of morning sickness while driving.  However, she was still occasionally late for work by five or ten minutes depending on the severity of the morning sickness.  Although Ms. Smith was only occasionally late to work by about five or ten minutes, she offered to make up the time by staying late.  While on several occasions Ms. Woodward would ask Plaintiff to make up the few

minutes of lateness, most of the time, Ms. Woodward would decline Plaintiff's offers to make up the five or ten minutes, telling Plaintiff it was "okay."

36.     Plaintiff often observed other employees arrive to work late. However, Ms. Smith is unaware of any other employees being reprimanded for arriving five to ten minutes late.

37.     Plaintiff also had to take several of her earned sick leave days due to pregnancy-related illness. Ms. Smith always texted or called Ms. Woodward to inform her of an upcoming lateness or absence to make sure they would be excused. Woodward always acknowledged the requests and would often respond "fine."

38.     Despite giving notice and trying to leave earlier to minimize the effect of her morning sickness on Banfield, Ms. Smith was ultimately fired for "lateness."

**BANFIELD TRIES TO FORCE MS. SMITH TO TAKE EARLY MATERNITY LEAVE**

39.     Ms. Smith's due date was in August of 2013. As part of the conditions of her employment with Banfield, Ms. Smith was entitled to three months of paid maternity leave.

40.     Despite not being due until August, in April of 2013, Woodward aggressively pushed Plaintiff to take her paid maternity leave early. Ms. Smith expressed that she was not yet ready to do so. Indeed, if Ms. Smith had done so, the three months would likely have expired prior to Ms. Smith's giving birth, leaving her with no paid maternity leave after having given birth to her child.

41.     After Woodward's initial unsuccessful attempts to compel Plaintiff to take her maternity leave early, Woodward contacted Banfield's human resources ("HR") department. In late April or early May, someone from Banfield's HR department contacted Plaintiff and impressed upon her the possibility of taking an early paid maternity leave. Ms. Smith again

declined to take her maternity leave early in order to preserve those benefits for when she truly needed them.

## MS. SMITH IS FIRED

42.     Shortly after Ms. Smith declined to take early maternity leave, and despite the fact that Ms. Smith's pregnancy-related absences and illness were excused, Ms. Smith was terminated.  While home on or about May 13, 2013, a scheduled day off, Ms. Smith received a phone call from Ms. Woodward informing her that she was terminated, that she did not have to come back to return to work, and that her final paycheck would be mailed to her.  When Plaintiff asked why she was terminated, Ms. Woodward told Plaintiff it was due to her due to absences and lateness.  Later that same day, Ms. Audit called Plaintiff to reiterate that she was terminated due to lateness and absence and there was "no reason" to return to work.

43.     As a result of Defendant's actions, Ms. Smith suffered severe emotional, physical, and psychological stress from the discriminatory treatment meted out by Banfield and its agents.  By failing to provide Ms. Smith with reasonable accommodations, the physical strain on Ms. Smith's body from standing eight hours a day needlessly risked her health and caused Plaintiff physical pain and discomfort.  Moreover, Ms. Smith felt singled out from her co-workers and "bullied" by her superiors which caused elevated levels of stress and led to feelings of isolation and inferiority.

## FIRST CAUSE OF ACTION

## GENDER DISCRIMINATION IN VIOLATION OF NYSHRL

44.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

45.     Banfield's acts and practices detailed above, including but not limited to: (1) treating Plaintiff differently than her similarly situated non-pregnant co-workers; (2) denying Plaintiff's request for reasonable accommodations for her pregnancy; (3) attempting to compel

Plaintiff to take leave while she could still perform her job in a reasonable manner; (4) retaliating against and terminating Plaintiff's employment due to her request for reasonable accommodations; and (5) terminating Plaintiff's employment on the basis of her pregnancy constitute unlawful discriminatory employment practices within the meaning of the NYSHRL.

46.     As a result of Banfield's discrimination, Plaintiff has suffered monetary damages, severe emotional distress, and mental anguish.

## SECOND CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47.     Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

48.     By Defendant's extreme and outrageous conduct, Banfield intended to cause and did cause severe emotional distress to Plaintiff or disregarded the substantial probability that its conduct would cause Plaintiff severe emotional distress.   Banfield's aforementioned conduct exceeded all bounds usually tolerated by decent society.

49.     Plaintiff has suffered, and continues to suffer, severe emotional harm, loss, injury, and damage as a result of Banfield's conduct.

**WHEREFORE**, Plaintiff requests judgment against the Defendant as follows:

A.     Declaring the acts and practices complained of herein are in violation of the NYSHRL;

B.     Enjoining and permanently restraining these violations of the NYSHRL;

C.     Awarding Plaintiff all economic, compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damages, and any other damages permitted by law pursuant to the above-referenced causes of action;

D.     Awarding reasonable attorneys' fees and the costs and disbursements of this action; and

E.    Any other relief the Court may deem appropriate.

Date:  New York, New York
       June 23, 2014

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:   _/s/ Adam Gonnelli_____
      Adam Gonnelli
      Javier Hidalgo
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: agonnelli@faruqilaw.com
       jhidalgo@faruqilaw.com

*Attorneys for Plaintiff*

10

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

| | |
|---|---|
| SHAWNECE SMITH, | X |
| | : |
| Plaintiff, | :    **Index No. 59755/2014** |
| | : |
| v. | :    **PLAINTIFF'S FIRST REQUEST** |
| | :    **FOR PRODUCTION OF** |
| | :    **DOCUMENTS** |
| MEDICAL MANAGEMENT | : |
| INTERNATIONAL, INC., d.b.a. BANFIELD | : |
| PET HOSPITAL, a Delaware Corporation, | : |
| | : |
| Defendant. | X |

Plaintiff Shawnece Smith, by and through her counsel, serves the following First Request For Production Of Documents upon Defendant Medical Management International, Inc., d.b.a. Banfield Pet Hospital and requests that Defendant answer and respond to such requests within the time required by the New York Civil Practice Law and Rules; and that Defendant produce such responses to Adam Gonnelli, Esq., Faruqi & Faruqi, LLP, 369 Lexington Avenue, 10th Floor, New York, NY 10017.

## INSTRUCTIONS

1.      You are required in responding to this request to obtain and furnish all information available to you and any of your representatives, employees, agents, brokers, servants, or attorneys and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, servants, or attorneys.

2.      Each request which seeks information relating in any way to communications to, from, or within a business and/or corporate entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents, brokers and/or servants of the business and/or entity.

3.      Each request should be responded to separately.  However, a document which is responsive to more than one request may, if the relevant portion is marked or indexed, be produced and referred to in a later response.

4.      All documents produced shall be segregated and identified by the paragraphs to which they are primarily responsive.  Where required by a particular paragraph of this Notice, documents produced shall be further segregated and identified as indicated in this paragraph. For any documents that are stored or maintained in files in the normal course of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which such documents were taken.

5.      If you object to a portion of any request, you must furnish information and/or documents responsive to the remainder of the request.

6.      Each request refers to all information and/or documents that are either known by the Defendant to exist or that can be located or discovered by reasonably diligent efforts of the Defendant.

7.      The documents produced in response to this Notice shall include all attachments and enclosures.

8.      References to the singular include the plural.

9.      The use of any tense of the verb shall be considered also to include within its meaning all other tenses of the verb so used.

10.     Pursuant to the CPLR, you are under a continuing duty to seasonably supplement the production with documents obtained subsequent to the preparation and filing of a response to each request.

11.     All documents called for by these Requests for which the Defendant claims a privilege or statutory authority as a ground for nonproduction shall be listed chronologically as follows:

      a.     The place, date, and manner of recording or otherwise preparing the document;

      b.     The name and title of the sender;

      c.     The identity of each person or persons (other than stenographic or clerical assistants) participating in the preparation of the document;

      d.     The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

      e.     The type of document;

      f.     The subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

      g.     The factual and legal basis for claim, privilege or specific statutory or regulatory authority which provides the claimed ground for nonproduction.

12.     Each request to produce a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in, or subject to,

directly or indirectly, the control of the party to whom this request is addressed.  In addition, each request should be considered as including a request for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original copies thereof).

13.    All documents produced in response to this Request shall be produced in their entirety notwithstanding the fact that portions thereof may contain information not requested.

14.    If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter.

15.    With respect to any document requested which was, but is no longer in Defendant's possession, custody or control, indicate the date the document ceased to be in Defendant's possession, custody, or control, the reason it is no longer in Defendant's possession, custody, or control, and the name and address of its present custodian.

## DEFINITIONS

1.    "You," "your," and "yourself" refer to the party(s) to whom the following requests are addressed, and its agents, representatives, officers, directors, affiliates, predecessors, and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities outside of the United States.

2.    "Person" means natural persons, firms, proprietorships, associations, partnerships, corporations, and every other type of organization or entity.

3.      "Communication" shall mean any transmission of information, the information transmitted, and any process by which information is transmitted, and shall include written communications and oral communications.

4.      Unless otherwise indicated, the relevant time period for these discovery requests shall be June 23, 2008 (six years prior to the date of filing of the complaint in this action) up to and including the present.

## REQUEST FOR DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

The entire personnel file of the Plaintiff.

**REQUEST FOR PRODUCTION NO. 2:**

A copy of Defendant's employee handbook that was operative during Plaintiff's employment.

**REQUEST FOR PRODUCTION NO. 3:**

All documents concerning Plaintiff's duties including, but not limited to, a formal job description.

**REQUEST FOR PRODUCTION NO. 4:**

All documents, communications, emails, or text messages created or received by Jan Woodward to, from, or concerning Plaintiff.

**REQUEST FOR PRODUCTION NO. 5:**

All documents, communications, emails, or text messages created or received by Kim Audit to, from, or concerning Plaintiff.

**REQUEST FOR PRODUCTION NO. 6:**

All documents concerning or referencing Plaintiff, including but not limited to, emails, text messages, and memoranda, including, but not limited to, any record of Plaintiff's communications with Defendant's corporate offices.

**REQUEST FOR PRODUCTION NO. 7:**

All documents referencing or concerning any complaints of gender discrimination, including, but not limited to, pregnancy discrimination, directed to Banfield in the past six years.

**REQUEST FOR PRODUCTION NO. 8:**

All documents concerning Banfield's policy on breaks and lunches that were applicable to Banfield's Mohegan Lake location.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning Banfield's policy on attendance and lateness that were applicable to Banfield's Mohegan Lake location.

**REQUEST FOR PRODUCTION NO. 10:**

All documents concerning or referring to any incidents of employees' attendance or tardiness, including, but not limited to, any disciplinary action.

**REQUEST FOR PRODUCTION NO. 11:**

All documents including text messages, emails, or any other communications concerning any employee being late to work or absent.

**REQUEST FOR PRODUCTION NO. 12:**

Names and last known addresses, phone numbers and emails of all employees who worked at the Lake Mohegan Banfield location while Ms. Smith was employed there.

Dated: June 24, 2014
      New York, NY

FARUQI & FARUQI, LLP

By: _____
        Adam Gonnelli
Javier Hidalgo
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: (212)-983-9330
Fax: (212)-983-9331
Email: agonelli@faruqilaw.com
       jhidalgo@faruqilaw.com

*Attorneys for Plaintiff*